(29 Misc. Rep. 679.)

## McCABE et al. v. COOK.

(Supreme Court, Special Term, Kings County.  December, 1899.)

SCHOOLS—SALARIES OF TEACHERS.

Laws 1899, c. 417, provides that no teacher in the public schools in the city of New York shall receive less than $600 a year, and also fixes the minimum salary for teachers after 10, 12, and 15 years' service, and authorizes and directs the board of estimate and apportionment to issue revenue bonds for the purpose of carrying into effect the provisions of the act. *Held*, that the school board of the borough of Brooklyn was not obliged to apply an unexpended balance of the salary fund in its hands at the time such act took effect to the payment of the increase in salaries of teachers effected by the act, but only so much thereof as might remain after it had made such increases in salaries of teachers, other than those effected by the act,. as it might deem fit.

Application for peremptory writ of mandamus by James J. McCabe and others against Henry R. M. Cook, as auditor, to compel him to audit the pay roll of the teachers of public school No. 23 of the borough of Brooklyn.  Writ allowed.

Ira Lee Bamberger and Edward M. Shepard, for applicants.
W. J. Carr, Asst. Corp. Counsel, for respondent.

GAYNOR, J.  The school board of Brooklyn borough has the power to fix by by-law the salaries of the public school teachers of that borough.  City Charter, § 1091.  Its discretion in that respect is unrestrained, except that it cannot in any year exceed the amount of the appropriation for such salaries.  Section 1542.  For the year 1899 there was appropriated by the board of estimate and apportionment of the city (section 226), and apportioned by the board of education of the city (section 1065), to the said Brooklyn school board for such salaries the sum of $3,126,238.  This sum was $318,303 in excess of the amount needed if the salaries established by the pay rolls of 1898 were not to be increased.  But it is conceded that such excess was appropriated and apportioned to the said school board to enable it to make such an increase.  The board of education of the city had in fact asked the board of estimate and apportionment for the extra sum of $742,280 for such an increase in Brooklyn, but did not get so much. The carrying out of this purpose of increase in teachers' salaries was a matter of detail, nice adjustment and slow gestation; and before the said school board had framed and enacted a new by-law for such increase, act chapter 417 of the Laws of 1899 was passed and took effect, viz., on April 25, 1899.  This act provides that no teacher in the public schools in the city of New York shall be paid less than $600 a year; and also fixes in the same way minimum salaries for teachers after 10, 12 and 15 years of service, and provides for other increases of salaries of principals, vice principals and heads of departments.  The increase effected in the teachers' pay rolls of Brooklyn borough by this act from the date of its passage for the year 1899 was $290,496.13.  If this increase had to be met by the said unapplied excess or balance of $318,303 in the salaries appropriation for 1899, it would, as is seen, practically exhaust such balance.  But the said act of the legislature making such increase also provided

that "the board of estimate and apportionment is hereby authorized and required to direct the issue of revenue bonds for the purpose of providing funds to carry into effect the provisions of this act." The view was therefore taken by the Brooklyn school board that it was not obliged to apply all of the said unapplied balance which it had in hand to the payment of such legislative increase, but only so much thereof (if any) as might remain after it had made such increases in salaries of teachers other than those effected by the said act as it might in its discretion find fit. In this view the said school board enacted a by-law on July 5, 1899, establishing new pay rolls. Such pay rolls carried out the said increase of $290,496.13 effected by the said act. They also contained other increases in teachers' salaries of a total amount of approximately $307,094.45, thus keeping this branch of the increase within the said unapplied balance of $318,303. The total increase in both branches, viz., in conformity with the said act, and outside of it, thus created, as is seen, a deficiency of $279,- 287.58. On October 5, 1899, the board of estimate and apportionment in so many words authorized and directed the comptroller to issue revenue bonds to the amount of $303,294 to pay the increase in the salaries of teachers in Brooklyn borough made by the said act; but the auditor of the department of finance refuses to audit the said pay rolls.

The contention for the auditor is that the said act of the legislature of its own force applied the said unapplied balance of the Brooklyn school board to the payment of the increase of salaries effected by the said act; and that therefore the other increase in salaries made by the said school board itself was void for lack of funds out of which to make it. No such intention is expressed in the said act, nor is it necessarily implied. The Brooklyn school board was given the said unapplied balance to use according to its judgment and discretion in raising and equalizing teachers' salaries. Such judgment and discretion extended to all the teachers. There were many other teachers to be considered and to receive justice besides those provided for by the said act. If we resort to construction of the said act to spell out the implied intention of the legislature, an intention to take away from the said school board for the year 1899 its wholesome power and discretion in the use of the funds given to it, does not seem to be there. And the contrary appears from the provision for the sale of revenue bonds, in which, if the legislature had such intention, it would have easily expressed it. Instead of saying, as it did, that such bonds should be sold "for the purpose of providing funds to carry into effect the provisions of this act," it would have authorized a sale of such bonds only to meet any deficiency in the school funds after the same had been applied to the payment of the increased expenditures made by the act.

The motion is granted.